**Electronically Filed
Intermediate Court of Appeals
30017
20-JUN-2013
08:00 AM**

NO. 30017

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

WENDELL E.K. KEKUMU, Plaintiff-Appellant,
v.
LINDA MAY KEKUMU, Defendant-Appellee.

APPEAL FROM THE FAMILY COURT OF THE THIRD CIRCUIT
(FC-D NO. 07-1-0132)

SUMMARY DISPOSITION ORDER
(By: Leonard, Presiding Judge, Reifurth and Ginoza, JJ.)

Plaintiff-Appellant Wendall E.K. Kekumu (Husband) appeals from the July 6, 2009 Divorce Decree filed in the Family Court of the Third Circuit (family court),[1] in which the family court awarded alimony to Defendant-Appellee Linda May Kekumu (Wife), entered a property division, and awarded Wife $1,895.84 in attorney's fees.

On appeal, Husband asserts the following points of error: (1) the family court's conclusion of law regarding the wasting of equity in the marital residence is clearly erroneous; (2) with regard to the family court's property distribution, the family court erred when it failed to address tax refunds and Wife's monetary withdrawals, and to award an "equivalence" to

---

[1] The Honorable Anthony K. Bartholomew presided.

Husband; (3) the family court clearly erred in its findings related to Wife's medical condition and her reasonable efforts to secure full time employment; (4) the family court clearly erred in its findings concerning Wife's ability to obtain medical coverage; (5) the family court erred in finding that "[a]t DOCOEPOT,[2] the parties had a joint account at [HFS Federal Credit Union (HFS FCU)], with an account balance of $50.00[;]" (6) the family court erred in its conclusion that the facts of the case analyzed in light of the statutory factors set forth in HRS § 580-47 warrant an award of alimony in favor of Wife; and (7) the family court abused its discretion in awarding Wife $1,895.84 in attorney's fees.

Based upon a careful review of the record and the briefs submitted by the parties, and having given due consideration to the arguments advanced and the issues raised therein, we resolve Husband's issues as follows:

(1)  Husband argues that the family court erred in its COL 1, which concludes that neither party will be charged with wasting the equity held in the marital residence:

> 1. Neither Plaintiff nor Defendant engaged in conduct during the pendency of this case which warrants a conclusion by the court that either party should be charged with "wasting" the asset comprised of the equity the parties held in the marital residence at the time it was subjected to foreclosure.  Therefore, the court declines to engage in a deviation in favor of either party on the basis of the other party's alleged wasting of the equity held in the marital residence.

### Discussion

> The general principle regarding the "wasting" of marital assets has been succinctly stated by the Hawaii Intermediate Court of Appeals as follows:

> > A reduction of the dollar value of the marital estate chargeable to a divorcing party occurs when, during the time of the divorce, a party's action or inaction caused a reduction of the

---

2  Date of the conclusion of the evidentiary part of the trial.

2

dollar value of the marital estate under such circumstances that he or she equitably should be charged with having received the dollar value of the reduction.

Higashi v. Higash[i], 106 Hawaii 228 (App. 2004), at 241 (emphasis added).

The issue therefore, as reflected by the emphasized language above, is not simply whether a reduction in the value of the marital estate can be attributed to the "action or inaction" of one of the parties -- it is whether when considering all of the circumstances it would be equitable to charge the entirety of the loss to one or the other party.

It is plainly evident that the parties in this case failed to maintain their mortgage payments and as a result suffered the foreclosure of the marital residence. It is equally evident that the foreclosure cost the parties a significant sum comprised of their equity at the time of the foreclosure.

Plaintiff insists that the loss should be laid at Defendant's feet because she declined to agree to a sale of the residence during the pendency of the divorce. Indeed, Defendant's reluctance to sell the residence was acknowledged at trial, and made manifest by her conduct during the litigation, i.e. her opposition to Plaintiff's motion to list the house for sale.

However, Plaintiff's argument is made less persuasive by the fact that he agreed at the January 7, 2008, hearing on his motion to list and several times thereafter to continue the motion until moved on and, eventually, until the trial date in October, 2008, by which time the motion had been mooted by events. Plaintiff's failure to press the issue of the sale of the residence clearly undermines his position. In addition, the undisputed fact that Plaintiff, who had been making the mortgage payments, unilaterally stopped making the payments in March, 2008, clearly mitigates against laying all of the blame for the foreclosure on Defendant.

Defendant argues that the unilateral decision by Plaintiff to stop paying the mortgage in March, 2008, is a sufficient basis for attributing the loss entirely to Plaintiff. Defendant's case is the closer case in the court's view, but still fails for several reasons. First, although Defendant's intransigence with regard to selling the residence is clearly insufficient to make her solely responsible for the loss, it clearly was a factor along with other factors to be considered. Further, like Plaintiff, Defendant failed to pursue her legal remedies when she agreed in late June and thereafter to continue her motion for relief (seeking an order that Plaintiff make good on the mortgage) until the time of trial.

3

> In short, while it is easy to conclude that the
> marital residence was subjected to foreclosure because of
> the collective failures and even the negligence of both
> parties, it does not seem so clear cut to the court that
> either of the two parties was so clearly more to blame than
> the other that it would be equitable to attribute the entire
> loss to either of them.

The family court's COL 1 concerning marital "waste"
presents a mixed question of law and fact, and thus this court
reviews it under the clearly erroneous standard of review. See
Booth v. Booth, 90 Hawai'i 413, 416, 978 P.2d 851, 854 (1999).

Husband argues that the family court wrongly "assumes
that Plaintiff's attempts to settle by continuing the motion in
favor of a settlement conference and agreement to continue the
trial to accommodate defense counsel's schedule act as a waiver
of Defendant's duty to not waste the marital asset." Husband
further argues that while he had discharged his duty not to waste
by making mortgage payments for as long as he could afford it and
until he started making rental payments when he moved out, Wife
stubbornly refused to either sell the house or to make mortgage
payments, which she could afford at the time.

Because the family court's COL 1 is supported by its
findings of facts, the findings of fact are not clearly
erroneous, and the decision "reflects an application of the
correct rule of law," it will not be disturbed. See Doe v. Doe,
120 Hawai'i 149, 165, 202 P.3d 610, 626 (App. 2009) (citation
omitted). As Husband concedes, the family court cited correct
and applicable law. The correct rule of law regarding "waste" is
as follows:

> A reduction of the dollar value of the marital estate
> chargeable to a divorcing party occurs when, during the time
> of the divorce, a party's action or inaction caused a
> reduction of the dollar value of the marital estate under
> such circumstances that he or she equitably should be
> charged with having received the dollar value of the
> reduction.

4

Higashi v. Higashi, 106 Hawai'i 228, 241, 103 P.3d 388, 401 (App. 2004).

Furthermore, Husband does not challenge the findings of fact that support COL 1. In determining that neither party should be equitably charged with "waste" of the marital residence, the family court essentially concluded that both Husband and Wife contributed to the loss of equity in the marital residence because Husband unilaterally stopped making payments in March 2008, Wife actively opposed and failed to agree to the sale of the residence during the pendency of the divorce, and Husband failed to press the issue of the sale of the marital residence. The conclusion that both parties were at fault such that neither party could be equitably charged with waste is supported by the family court's unchallenged findings of fact. Accordingly, COL 1 is not erroneous.

(2) Husband challenges the family court's property division, arguing that the family court failed to address or consider tax refunds that Wife used, Wife's monetary withdrawals from a credit union account, a tax debt owed by Husband, and to assess an equalization amount.

At an October 21, 2008 hearing, the parties testified extensively with respect to tax refunds received by Wife. Statements from the HFS Federal Credit Union account show a total of $5,858.65 in deposits designated as tax refunds. Husband testified that the tax refunds were to be split 50-50, or alternatively, that they were to be used to pay for the mortgage on the parties' house. Husband also testified that he owed the IRS $583 dollars for 2007. Finally, the record reflects an October, 2008 statement from the HFS Federal Credit Union account that shows numerous withdrawals. Husband contends Wife made withdrawals in the month before the trial totaling $4,900.

5

As asserted by Husband, there is no indication in the record that the family court considered or addressed the above items in making its property distribution award. Therefore, we remand to the family court for further consideration of the property division between the parties in light of the tax refunds, monetary withdrawals, and Husband's tax liability, including whether an equalization amount is warranted.

(3) Husband argues that the family court's FOFs 55 and 56 are clearly erroneous because they are inconsistent, and not supported by substantial evidence in the record. See Doe, 120 Hawai'i at 165; 202 P.3d at 626. The family court's FOFs 55 and 56 state:

> 55. Defendant's medical condition places significant limitations on her ability to seek and maintain full-time employment.

> 56. Notwithstanding her medical disability, Defendant has made reasonable efforts to secure full-time employment within her physical limitations.

There is substantial evidence in the record to support FOFs 55 and 56. As to FOF 55, Wife testified that prior to the marriage she sustained a knee injury in an industrial accident. The family court admitted into evidence a letter from Wife's doctor, Christopher Linden, M.D., stating that Wife has "severe progressive bilateral degenerative joint disease most notable in both hips" and that it is recommended that Wife avoid "long periods of standing and walking, carrying of moderate to heavy weight, and forceful extension, flexion, or rotation at the hip." Wife testified that she cannot walk for prolonged periods or lift anything heavy.

As to FOF 56, Wife testified that she currently qualifies for unemployment, and in order to do so, she does job searches every week, checks the newspapers and Work Force Development Website for available jobs, and goes to all of the interviews that she gets. Wife also introduced an exhibit,

received October 21, 2008, listing all of the employers she had applied to in the last two months, including twenty-eight named businesses. Furthermore, there is nothing inconsistent about the two findings. FOFs 55 and 56 are not clearly erroneous.

(4) Husband argues that FOFs 57 and 58 are clearly erroneous because there was no evidence presented at trial as to the cost of Defendant's healthcare. FOFs 57 and 58 state:

> 57. Defendant presently qualifies for medical coverage through Plaintiff's military retirement/disability benefits; following the divorce, Defendant will have no medical coverage unless she pays for it from her own resources, and the cost for such coverage may be prohibitive due to her pre-existing medical condition.

> 58. Upon the divorce, Defendant will be eligible for medical coverage for 18 months through the COBRA program, at an estimated monthly cost of $686.00.

As to FOF 57, there is substantial evidence to support the finding. Wife testified that she currently had health insurance through Husband's civil service retirement, and that after the divorce she will no longer have health insurance. As discussed above, there is substantial evidence that Wife has a pre-existing condition.

FOF 58 appears to be clearly erroneous because both parties agree that the family court did not take judicial notice that the cost of health insurance under COBRA was $686 and no evidence was presented at trial as to the cost of health insurance. However, Husband does not explain how or why FOF 58 was essential to any of the family court's COLs or decisions, and thus any error in FOF 58 was harmless.

(5) FOF 64 states that "[a]t the DOCOEPOT, the parties had a joint account at HFS FCU, with [an] account balance of $50.00." Husband argues that FOF 64 is clearly erroneous because according to the additional exhibits admitted by the parties after trial in October 2008, the HFS FCU Draft balance was $1,086.50, the Share balance was $50, and Wife made three checks

7

payable to herself for $1,000.00 each, in addition to her monthly grocery, debt payments, and other minor withdrawals.

FOF 64 is not clearly erroneous. As Wife points out, the "Share Draft" portion of the HFS FCU account had a widely varying balance, was overdrawn by $88.19 during the month before trial, and opened the month of trial with a balance of $45.03. Moreover, Husband's own proposed finding as to the balance of the account was $63. Thus, it was not clearly erroneous for the family court to value the Share Draft portion of the HFS FCU account at zero and the Regular Shares portion at $50.

(6) Husband argues that the family court erred in awarding Wife alimony, and challenges the court's COL 3, which states:

> 3. The Court concludes that the facts of this case as analyzed in light of the statutory factors set forth in HRS sec. 580-47 warrant an award of alimony in favor of Defendant as follows: (a) $1,500.00 a month for twenty-four (24) months, and (b) $1,000.00 a month for the following thirty-six months, and (c) $500.00 a month thereafter, until the death of either party or Defendant's remarriage, subject to Plaintiff's right to seek modification of the ordered amounts should Defendant become qualified for social security disability payments, or should Defendant secure full-time employment providing her with an income equal to or in excess of $3,000.00 a month.

> Discussion

> HRS sec. 580-47 sets forth thirteen specific factors the court must analyze in assessing whether to award alimony. The court's analysis of the facts of this case in light of each of those factors is as follows:

> (1) The financial resources of the parties.

> The parties have significantly unequal financial resources. Plaintiff enjoys a guaranteed income in excess of $4,000 a month, and also receives medical care and drug coverage at a nominal monthly cost. Defendant's present physical condition makes full-time employment problematic, although not necessarily impossible, as her works skills tend toward clerical, administrative and technical areas, which tend to involve less physical stress. Defendant does have seasonable and some part time employment, and prospects, however uncertain, of full-time employment in the future. In addition, Defendant may qualify for social

8

security disability, and will presumably qualify for social security retirement benefits when she attains the age of 62.

(2) <u>Ability of the party seeking support and maintenance to meet his or her needs independently.</u>

As noted above, Defendant's ability to meet her needs independently are presently limited by her medical condition.

(3) <u>Duration of the marriage.</u>

The marriage at issue in this case lasted for twenty-three years. The duration of the marriage reflects a serious commitment and investment by both of the parties, and it is fair to consider that Defendant's sustained contributions, material and otherwise, to the marital partnership entitle her to a measure of support as she continues her life alone.

(4) <u>Standard of living established during the marriage</u>.

The alimony awarded by the court is reasonably calculated to enable both parties to approximate the standard of living which their joint enterprise had supported. Clearly, two households must necessarily incur expenses more efficiently absorbed by one; this is the inevitable and unavoidable consequence of the parties' decision to separate.

(5) <u>The age of the parties.</u>

Plaintiff is fifty-nine; Defendant is fifty-seven. The court's award is intended to appropriately account for the age related considerations at play, specifically factors related to when the Defendant may expect to begin qualifying for other means of support, such as social security and medicare, etc.

(6) <u>The physical and emotional condition of the parties.</u>

Clearly, the Defendant's physical/medical condition establishes her present and on-going need for support. The parties' emotional needs have not emerged as a significant issue in this case.

(7) <u>The usual occupation of the parties during the marriage.</u>

Plaintiff has been unemployed for nearly the entirety of the marriage, and will likely remain so. Defendant has worked for substantial portions of the marriage, generally in clerical, administrative, technical and service oriented positions. Defendant's present ability to work is limited by her physical difficulties, which comprises the most significant factor in favor of the court's alimony award.

(8) The Vocational and employability of the party seeking support and maintenance.

As discussed at length above, Defendant['s] present employability is problematic due to her physical difficulties.

(9) Needs of the parties.

The court's award is designed to substantially meet Defendant's present needs, and seems reasonably calculated to serve that purpose, taking into account that Defendant reports consistent part-time and seasonal income. Considering the outstanding debts of both parties, the court does not imagine that either party will enjoy anything more than a frugal lifestyle in the future.

(10) Custodial and child support responsibilities.

The parties' only child is no longer a minor, and does not presently require support. However, should he return to full-time pursuit of his college education, the parties may return to the court to address the issue of support in light of the circumstances as they then exist.

(11) Ability of the party from whom support and maintenance is sought to meet his or her own needs while meeting the needs of the party seeking support and maintenance.

Plaintiff enjoys the security of guaranteed income, and guaranteed medical care at a nominal cost. The alimony awarded by the court is approximately one third of that income for two years and will decrease thereafter. Plaintiff will be able to claim a tax deduction for the alimony he pays. Under the circumstances, Plaintiff should be reasonably able to meet his needs going forward.

(12) Other factors which measure the financial condition in which the parties will be left as the result of the action under which the determination of maintenance is made.

The most significant consequence of the divorce to either party will be its impact on Defendant's ability to secure health care. It appears to the court that Defendant may at some point qualify for social security disability, at which point her situation may be significantly altered. The conditions placed upon the court's award are intended to allow for a reasonable adjustment of the ordered payments to reflect changing conditions as they occur.

(13) Probable duration of the need of the party seeking support and maintenance.

10

> Defendant's present need is manifest. Defendant's needs over time are likely to persist, but may diminish as other resources become available, and the court's award is structured accordingly.

Because Husband's challenge to COL 3 regarding alimony is a mixed question of law and fact, this court reviews it under the clearly erroneous standard of review. Booth, 90 Hawaiʻi at 416, 978 P.2d at 854. First, Husband argues that the family court erred when it did not make a finding as to the amount of money that is needed to maintain Wife's standard of living. Husband cites to Wong v. Wong, where the Hawaiʻi Supreme Court held that when deciding the issue of spousal support, there are three relevant circumstances that a court must consider:

> [t]he first relevant circumstance is the payees' need. What amount of money does he or she need to maintain the standard of living established during the marriage? The second relevant circumstance is the payee's ability to meet his or her need without spousal support. Taking into account the payee's income, or what it should be, including the net income producing capability of his or her property, what is his or her reasonable ability to meet his or her need without spousal support? The third relevant circumstance is the payor's need. What amount of money does he or she need to maintain the standard of living established during the marriage? The fourth relevant circumstance is the payor's ability to pay spousal support. Taking into account the payor's income, or what it should be, including the income producing capability of his or her property, what is his or her reasonable ability to meet his or her need and to pay spousal support?

87 Hawaiʻi 475, 485, 960 P.2d 145, 155 (App. 1998) (emphasis added) (quoting Vorfeld v. Vorfeld, 8 Haw. App. 391, 402-03, 804 P.2d 891, 897-98 (1991)).

While both Wong and Hawaii Revised Statutes (HRS) § 580-47 require a court to consider the payees' need when deciding whether to award alimony, they do not require a court to make an explicit finding as to the dollar amount a payee needs to maintain the standard of living established during the marriage. See also Smith v. Smith, 56 Haw. 295, 299-300, 535 P.2d 1109, 1113-14 (1975) (rejecting appellant's argument that the trial

11

court failed to consider the factors enumerated in HRS § 580-47, noting that "[t]hese complex and detailed arrangements evince a careful examination of the financial situation of the parties, rather than a mechanical application of a rule of property law."). It is apparent from the family court's analysis that Wife's needs were central to its decision, when the court stated that "[t]he court's award is designed to substantially meet Defendant's present needs, and seems reasonably calculated to serve that purpose, taking into account that Defendant reports consistent part-time and seasonal income."

Second, Husband argues that the family court erred in not making an explicit finding as to the second factor under Wong, which is "the payee's ability to meet his or her need without spousal support[,] [t]aking into account the payee's income[.]" Wong, 87 Haw. at 485, 960 P.2d at 155. Just as with Husband's first argument, Husband does not cite to any authority that requires a court to make an explicit finding as to the payee's income. While the family court did not make an explicit finding as to Wife's income, it is apparent that it considered the fact that Wife's income is small and sporadic, as it noted that Wife only received income from part time and seasonal employment.

Specifically, Husband argues that Wife is likely fully employed, and points to a "$6700.00 deposit" into Wife's bank account. However, the so-called "$6700 deposit" is actually a $3,700 deposit that Wife claims is from a loan against her life insurance, immediately followed by three $1,000 withdrawals, later followed by three separate $1,000 deposits. Husband also points to a September 2008 statement showing a $1,900 deposit from Custom House, followed by an immediate withdrawal of $1,900. The record reflects that the $1,900 deposit was from ProFantasy Software, income that Wife has declared throughout the divorce.

12

Third, Husband argues that the family court erred in failing to take into account both the third and fourth factors under <u>Wong</u>. The third factor under <u>Wong</u> is the payor's need, or "What amount of money does he or she need to maintain the standard of living established during the marriage?" <u>Id.</u> The fourth factor under <u>Wong</u> is the payor's ability to pay spousal support, or "[t]aking into account the payor's income, or what it should be, including the income producing capability of his or her property, what is his or her reasonable ability to meet his or her need and to pay spousal support[.]" <u>Id.</u> Husband contends that the family court failed to take into account the fact that a majority of the parties' debt was assessed to Husband and that his income and expense statement reflects that his monthly expenses exceed his monthly income, such that he should not be required to pay alimony.

In this case, it is evident that the family court did consider Husband's needs and his ability to pay spousal support. As a backdrop, the record establishes that both parties incurred fairly significant debt in their own names and, based on the parties' agreement, the family court ruled that each would be responsible for the debts incurred in their own names. Moreover, although Husband's income and expense statement reflects monthly expenses greater than his monthly income, his credit payments (which make up a majority of the listed expenses) are for fairly sizeable amounts each month. There is no indication how the credit payment amounts were derived or whether they are more than the required minimum payments each month.

In this context, although the family court did not directly address husband's income and expense statement, the family court specifically ruled with respect to the needs of the parties that "<u>[c]onsidering the outstanding debts of both parties</u>, the court does not imagine that either party will enjoy

13

anything more than a frugal lifestyle in the future." (Emphasis added.) The court thus expressly considered the debts being carried by each of the parties. Moreover, in specifically addressing the ability of Husband to meet his own needs while paying alimony, the family court ruled that

> Plaintiff enjoys the security of a guaranteed income, and guaranteed medical care at a nominal cost. The alimony awarded by the court is approximately one third of that income for two years and will decrease thereafter. Plaintiff will be able to claim a tax deduction for the alimony he pays. Under the circumstances, Plaintiff should be reasonably able to meet his needs going forward.

(Emphasis added.) The family court reduced the alimony payments after the first two years, and then again reduced the payments after the following three years, thus balancing Wife's needs with Husband's needs and ability to pay.

We thus conclude that the family court properly considered the required factors in awarding alimony to Wife and did not abuse its discretion in awarding alimony as set forth in COL 3.

(7) Husband challenges the family court's award of attorney's fees to Wife, which provided:

### Attorney's Fees

> Plaintiff shall be responsible for his own attorneys fees, and shall pay $2,000.00 toward Defendant's attorneys fees, minus the amount of $104.16, which was previously awarded to Plaintiff by the court, for a total of $1,895.84.
> Defendant shall be responsible for any of her attorneys fees in excess of the amount contributed by Plaintiff.

HRS § 580-47(f) states:

> (f) Attorney's fees and costs. The court hearing any motion for . . . an order for the support and maintenance of one party by the other . . . may make such orders requiring either party to pay or contribute to the payment of the attorney's fees, costs, and expenses of the other party relating to such motion and hearing as shall appear just and equitable after consideration of the respective merits of the parties, the relative abilities of the parties, the economic condition of each party at the time of the hearing, the burdens imposed upon either party for the benefit of the

14

children of the parties, and all other circumstances of the case.

As this court has previously noted,

> [T]he purpose of HRS § 580-47 is to allow the court to shift the burden of paying for the costs of litigation from one party to another when justice so requires. The award of attorney's fees under HRS § 580-47 is discretionary, and the family court may grant attorney's fees thereunder when the family court feels it is 'just and equitable' to do so.

Owens v. Owens, 104 Hawai'i 292, 307, 88 P.3d 664, 679 (App. 2004).

Because we remand as to the family court's property distribution, we vacate the family court's award of attorney's fees and also remand this issue for further consideration.

Therefore, IT IS HEREBY ORDERED that we vacate the Family Court of the Third Circuit's July 6, 2009 Divorce Decree with respect to the property distribution and the award of attorney's fees. This case is remanded to the family court for further proceedings consistent with this Summary Disposition Order. In all other respects, we affirm the Divorce Decree.

DATED: Honolulu, Hawai'i, June 20, 2013.

On the briefs:

Joy A. San Buenaventura
for Plaintiff-Appellant

Brian J. De Lima
(Crudele & De Lima)
for Defendant-Appellee

Presiding Judge

Associate Judge

Associate Judge

15